No. 04-481C
(Judge G. Miller)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

INFORMATION SYSTEMS & NETWORKS CORPORATION,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

APPENDIX, VOLUME NO. ONE,
DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

MARK A. MELNICK
Assistant Director

DAVID B. STINSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor, 1100 L St.
Washington, D.C. 20530
Tele: (202) 307-0290
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

GREGORY T. ALLEN
Trial Attorney
Defense Contract
Management Agency
Manassas, Virginia

July 30, 2004

# Index to Appendix

| | Page |
|---|---|
| Declaration of John H. Svensson, dated July 27, 2004 | 1 |
| ISN's June 27, 2002 claim for settlement of indirect cost rates; Prompt Payment Act interest; unpaid fees, retainages, and contract costs; and increased contract ceilings | 6 |
| August 28, 2002 letter from the ACO to ISN | 16 |
| September 18, 2002 letter from the ACO to ISN | 18 |
| September 19, 2002 electronic mail message from Charles Bonuccelli to the ACO | 20 |
| October 25, 2002 letter from Charles Bonuccelli to the ACO | 22 |
| November 19, 2002 letter from Charles Bonuccelli to the ACO | 23 |
| December 8, 2002 letter from the ACO to ISN | 66 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFORMATION SYSTEMS & NETWORKS CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-481C |
| | ) | (Judge G. Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DECLARATION OF JOHN H. SVENSSON

1. I, John H. Svensson, make the following declaration in accordance with 28 U.S.C. § 1746.

2. I am an Administrative Contracting Officer ("ACO") for the Defense Contract Management Agency ("DCMA"), an agency of the Department of Defense. I am currently assigned to DCMA Maryland, located at 217 East Redwood Street, Suite 1800, Baltimore, Maryland. DCMA Maryland is a contract administration office that performs contract administration functions in accordance with FAR Subpart 42.3. I have been with DCMA, or its predecessor organization, since 1997, and have been an ACO since 2001.

3. One of the contractors to which I have been assigned as ACO is Information Systems & Networks Corporation ("ISN"). I have been the ACO for ISN since May 2002.

4. On or about July 1, 2002, I received a letter, dated June 27, 2002, from Charles Bonuccelli, the Chief Financial Officer of ISN, that purported to be a claim under the Contract Disputes Act of 1978 ("CDA")("the June 27, 2002 claim"). This letter is Exhibit A to my declaration.

5. Included in the claims set forth in the June 27, 2002 claim letter were five disputed issues related to indirect cost rates. These issues, as described by ISN, were: "Cost of Ownership"; "Cost of Bonuses"; "Cost of Pension"; "Cost of Ownership-Equipment Rental"; and "Corporate and B&P Cost Allocations." These were matters related to settlement of indirect cost rates under FAR Subpart 42.7.

6. Following my receipt of the June 27, 2002 claim, I communicated with Charles Bonuccelli about the background of the disputed issues concerning indirect cost rates in order to try to resolve them amicably. Pursuant to our discussions, on July 16, 2002, I provided a list of ISN's open contracts to Mr. Bonuccelli.

7. On August 28, 2002, I wrote to Mr. Bonuccelli, informing him that, due to the complexity of the issues in the June 27, 2002 claim, I would not be able to issue a contracting officer's final decision within sixty (60) days, and would issue

a decision by October 25, 2002. Exhibit B. I also requested additional supporting information about the ISN claims.

8. On September 18, 2002, I again wrote to Mr. Bonuccelli, requesting further clarification and information regarding the indirect cost issues. Exhibit C.

9. On September 19, 2002, Charles Bonuccelli sent an electronic mail message to me providing some additional information concerning the disputed indirect costs. Exhibit D.

10. In late September and October 2002, Mr. Bonuccelli and I continued to discuss the disputed indirect cost issues in an attempt to clarify the facts related to them. Pursuant to a verbal understanding between us to allow an opportunity to negotiate the indirect cost rate issues, Mr. Bonuccelli submitted a letter withdrawing ISN's June 27, 2002 claim on October 25, 2002. Exhibit E. He provided a copy to me in an electronic format on that date. In his letter he mistakenly stated the date of the claim as July 16, 2002. Mr. Bonuccelli confirmed this in a telephone conversation with me on or about October 28, 2002.

11. On November 19, 2002, Mr. Bonuccelli provided some additional information concerning the indirect cost issues raised in the withdrawn June 27, 2002 claim. Exhibit F. In his

letter, Mr. Bonuccelli referred to a "revised claim," although the letter was not clearly designated as such.

12. On December 8, 2002, I responded to Mr. Bonuccelli's November 19, 2002 letter. Exhibit G. In my letter, I notified him that I considered the June 27, 2002 claim to have been completely withdrawn by his letter of October 25, 2002, and I could not treat his November 19, 2002 submission as a new claim because it did not contain the certification required by FAR 33.207. I then suggested we meet to negotiate the disputed issues. Shortly thereafter, we met at the offices of the Defense Contract Audit Agency in Germantown, Maryland to commence negotiations.

13. Over the course of the next seven months I continued to communicate with Mr. Bonuccelli, both personally and by electronic mail and telephone, in an attempt to negotiate a settlement of the disputed indirect cost issues under the procedures of the Allowable Cost and Payment clause, FAR 52.216-7 (48 C.F.R. 52.216-7). Although we had reached an agreement in principle on four of the five disputed issues, we were never able to reach total agreement on all points.

14. In June 2003, Mr. Bonuccelli informed me he had been told by his superiors that he was not to have any additional

discussions with me on the indirect cost issues. I did not have any further communications with Mr. Bonuccelli on this matter.

15. The matters contained in the June 27, 2002 claim were never resubmitted to me as a CDA claim by any representative of ISN.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 27 July, 2004.

John H. Svensson

ISN

Information Systems & Networks Corporation
*Corporate Headquarters*

**Charles Bonuccelli**
*Chief Financial Officer*

June 27, 2002

Mr. John Svennson
Administrative Contracting Officer
Defense Contract Management Command
217 East Redwood Street - Suite 1800
Baltimore, MD 21202

Dear Mr. Svennson:

As Chief Financial Officer to Information Systems and Networks Corporation ("ISN"), and pursuant to Federal Acquisition Regulation ("FAR") §52.233-1 and the Contract Disputes Act of 1978, 41 U.S.C. §601 et. Seq. as amended ("CDA"), ISN respectfully submits the following certified claims under Contract Nos.:

| | |
|---|---|
| F19628-82-C-0108 | 503BNBSC3513 |
| NAS5-27486 | 5C-Y-EIR-0028 |
| MDA903-83-D-1504 | DTFA01-85-Y-01018 |
| MDA903-84-C-0222 | 85-C-00150 |
| DAAK20-84-C-0149 | N00024-85-C-6528 |
| N68335-84-D-0903 | DAAH00-85-C-0010 |
| DASG60-85-C-0035 | NASW-4164 |
| 1026-47-0330 | MDA903-87-C-0004 |
| 1026-485009 | SEC-87-0008 |
| F19628-85-C-0035 | N66604-87-D-0098 |
| 1026-47-0330 | MDA903-88-C-0702 |
| 1026-485009 | 273-91-C-0005 |
| F19628-85-C-0043 | DAAK70-83-C-0145 ("the Contracts")[1] |

ISN recognizes that DCMC may not even be able to address several of these contracts, namely because of the M account issue. Thus, ISN has prepared this request in the form of a claim to

[1] ISN, in the interest of expediency and efficiency, has chosen to consolidate all claims from each of the 23 contracts into one CDA Claim. The reason is that all the claims share a common nucleus of facts and law other than the contract amounts which are owed, and concern identical issues, i.e., unpaid fees and retention, contract ceiling payments and adjusted contract amounts as a result of the 15 years delay in finding the DCAA's final billing rates.

settle the remaining outstanding issues and to facilitate payment as quickly as possible. Your Office is in the process of completing a list of open contracts and may have information that may alter the amounts claimed on the Schedule of Open ISN Contracts (Fiscal Years 1985-1996) (Schedule) or may change which contracts are included. This Schedule does not represent every Federal government (Government) contract that ISN has and only includes contracts that ISN believes DCMC had been assigned cognizance. Please inform us of any modification to the list of contracts. Also please inform us of any additional contracts to help us complete the remaining work on ISN's contracts close-outs.

ISN submits that the Government owes amounts under each of the subject Contracts; that these amounts were compiled with data from DCAA Audit Reports, DCAA Form 1s, Indirect Cost Submissions and the records of ISN. The indirect cost rates that were used to calculate the costs on the schedule comply with the requirements of FAR. The indirect cost rates exclude the excess executive compensation and state income tax issues because these issues have been litigated and resolved.

The enclosed Schedule sets forth the amounts owed ISN on each of the cost-type Contracts. The claim asserted herein is for the payment of each amount owed under each of the subject Contracts. As you and I previously discussed, the former ACO refused to meet with ISN to discuss any issues until those issues that were being litigated were resolved. It has now been 15 years. The Government's failure to resolve outstanding issues and pay these amounts over such a long time constitutes a breach of contract under each of the subject Contracts. Thus, ISN claims that each of the amounts should have been paid within a reasonable time thereby invoking

prompt payment act interest. The purpose of this claim is to recover the monies due and owing to ISN as a consequence of the Government's actions.

Adjusted Indirect Cost Rates

As you are aware, the indirect cost rates have not been settled since 1985. ISN has received a final decision from the ACO on indirect cost rates only for 1985 and 1986 In order to facilitate a quick resolution of outstanding indirect cost rates, ISN has accepted and adjusted the indirect cost rates for all DCAA findings except the following:

- Cost-of-Ownership. On the ISN offices. DCAA's position is incorrect. DCAA did not include all costs of owning the building, understated the amount of square footage used and calculated a cost of occupied square footage instead of the cost of ownership. ISN has had the calculations re-calculated and audited by independent auditors to assure its accuracy.

- Cost of Bonuses. DCAA claimed it allowed bonuses on a cash basis. In actuality, DCAA has disallowed bonuses on an accrual basis for years where the amount paid in the fiscal year was smaller and in the fiscal year where the bonuses paid were significantly higher they allowed the accrual amount. DCAA is inconsistent. ISN records prove that all bonuses accrued were paid. The confusion appeared to have occurred because the September 30 year-end bonuses were actually paid in the following quarter, which, of course, is the next fiscal year. The bonuses were properly accrued based on the performance in the fiscal year accrued. All bonuses were paid prior to the end of the next quarter. If the DCAA position were to stand, ISN would not be reimbursed for all of the bonuses paid and the cost would not be matched with the period in which the obligation was created.

Mr. John Svensson
June 27, 2002
Page 4

- Cost of Pension. In all but one year, ISN has completed the requirements of FAR 31.205-6(j)(2)(i). To follow the DCAA position would be contrary to the FAR. Specifically, the DCAA has misquoted the regulation about IRS qualified pension plans to ignore the following:

  to be allowable in the current year, pension plan costs must be funded by the time set for filing of the federal income tax return or any extensions thereof.

  It is only by ignoring the FAR that DCAA's position could be sustained. In reality, ISN only missed the deadline as stated in FAR in one fiscal year. The indirect cost rates used reflect this.

- Cost of Ownership-Equipment Rental. An ACO previously determined that Shel-Nar, an affiliated organization, under FAR 31.205-36(b)(3) was a business that had an established practice of leasing equipment to unaffiliated lessees at the time the leases were made with ISN. Thus, under FAR 31.205-36(b)(1), ISN has proved that the rental charges were reasonable based upon competition, market conditions and options available to ISN. DCAA has never accepted the ACO's determination and has repeatedly questioned such costs ignoring that ISN has complied with the requirements of FAR. Since Shel-Nar has refused to subject itself to DCAA audit, DCAA has arbitrarily question 50% of such costs. Such questioned cost disappeared after fiscal year 1995 because the leasing company dissolved.

- Corporate and B&P Cost Allocations. This is an issue complicated by DCAA because it ignored the requirements of both FAR and the Cost Accounting Standards (CAS). DCAA

had proposed and ISN accepted the method for allocating two intermediate cost pools, B&P and Corporate expense beginning in 1988. ISN recognizes that it is partially to blame because it accepted DCAA's allocation method for B&P costs to overhead pools without obtaining the ACO's approval.

The issue, as it effects the indirect cost rates used on ISN's Schedule, is that DCAA subsequently questioned corporate allocations made to indirect cost pools based on casual-beneficial allocation bases, while allowing B&P cost allocations to be made to the overhead pools between fiscal years 1988 to 1995. The complication is that during the same period of time, DCAA successfully argued that ISN was an unsegmented company for CAS purposes and would not allow ISN to allocate its G&A cost as a home office expenses under CAS 403. If ISN was not a home office under CAS 403, there is no need to deviate from the allocation requirements of CAS 420.

While the 'corporate' cost allocations are clearly permitted under CAS 403, 409, 410, and 418, CAS 420 specifically requires that B&P expenses be allocated to final cost objectives on the same basis as the G&A unless a special allocation is approved by the ACO. Even under CAS, a special allocation would not mean allocating the B&P cost through the overhead cost pools. ISN had not seen any correspondence from the ACO approving this DCAA method of allocating B&P costs. ISN is not aware of any approval from the ACO. Further, FAR 31.205-18(b)(2) also requires the B&P costs to be allocated upon the same allocation basis as G&A. Therefore, ISN has reduced the G&A pool by the corporate allocations and increased the G&A pool by the B&P expense. The net impact increases the G&A rate slightly.

ISN's Claims

The Government is obligated to pay ISN unpaid fees on 17 of the 23 contracts listed in the Schedule. It is also obligated to pay retentions on invoices for nine contracts, and all contract costs below ceilings less previous payments should have been paid to ISN.

ISN is requesting the Government to increase the Contract Cost limitation on the 22 Contracts on the attached Schedule, to compensate ISN for the indirect rate adjustments. Normally in a cost type contract there is a limitation of cost or funds clause. Such clauses do not apply in this case because of the numerous unresolved issues which did not permit ISN to inform agencies of the potential over-runs.

ISN has reduced its billings on the subject Contract by $155,376.52 because of DCAA objections. After DCAA issued the Form 1, ISN also paid $360,200.00 plus interest to the Government. ISN is owed the entire $515,576.52 from the original time it was requested. We understand that your office is still waiting a complete accounting of the amounts withheld on the Contracts from DFAS and we are eager to obtain an exact accounting of such amounts. We are requesting that interest be paid in the estimated amount of $280,000.00 for these wrongful withholdings.

ISN's claim totals $4,951,996.01without interest. Of this amount, fixed fee is $494,360.85. The Government has refused to process any request for additional costs while at the same time refusing to settle rates. Interest to be paid under the Prompt Payment Act on all outstanding amounts is estimated at $578,000.00.

ISN
Information Systems & Networks Corporation
Corporate Headquarters



ISN is entitled to payment of its claim in the amount of $5,804,260. The breakdown of each contract amount is set forth in the attached Schedule. The President has signed a claim certification that is attached to this letter.

ISN requests that the Contracting Officer issue a final decision within 60 days from the date this letter is received. ISN will cooperate to resolve any and all issues with DCMC and will provide any information DCMC needs to support its positions. If you have any questions, please call me at (301) 469-0400, ext. 367.

Very sincerely yours,

Charles Bonuccelli

Chief Financial Officer

Cc. NS/RM

Attachments

10411 Motor City Drive • Bethesda, Maryland 20817 • 307-469-0400 • Fax: 301-469-7053 • http://www.isncorp.com

# CLAIM CERTIFICATION

I, Roma Malkani, hold the office of President and Chief Executive Officer of Information Systems & Networks Corporation ("ISN") hereby provides the following certification as required by 41 U.S.C. §605 (c)(1)(1994):

1. *I am the authorized representative of ISN; I am familiar with ISN's books and* records of account and with ISN's claims under Contracts Nos.:

| | |
|---|---|
| F19628-82-C-0108 | 503BNBSC3513 |
| NAS5-27486 | 5C-Y-EIR-0028 |
| MDA903-83-D-1504 | DTFA01-85-Y-01018 |
| MDA903-84-C-0222 | 85-C-00150 |
| DAAK20-84-C-0149 | N00024-85-C-6528 |
| N68335-84-D-0903 | DAAH00-85-C-0010 |
| DASG60-85-C-0035 | NASW-4164 |
| 1026-47-0330 | MDA903-87-C-0004 |
| 1026-485009 | SEC-87-0008 |
| F19628-85-C-0035 | N66604-87-D-0098 |
| 1026-47-0330 | MDA903-88-C-0702 |
| 1026-485009 | 273-91-C-0005 |
| F19628-85-C-0043 | DAAK70-83-C-0145 |

2. I hereby certify that ISN's claims as set forth in its Chief Financial Officer's letter of June ___ 2002, to which this Claim Certification is attached, is made in good faith; that ISN's supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustments for which ISN believes the Government is liable.

3. I am duly authorized to certify the claim on behalf of ISN.

Roma Malkani
Roma Malkani
President and Chief Executive Officer

*Under the penalty of perjury*

June ______, 2002

Schedule of Open ISN Contracts
Fiscal Years 1985 to 1996

ATTACHMENT TO LETTER DATED JUNE 26, 2002

| ISN PROJ NO | FEDERAL GOVERNMENT CONTRACT NUMBER | CONTRACT COST LIMITATION (1) | ISN COST INCURRED BASED ON FINAL RATES | COST BILLED TO U.S. GOVT BASED ON INTERIM INDIRECT RATES (1) | AMOUNTS WITHHELD FOR DCAA FORM 1's (1) | GOVERNMENT RETENTION ON INVOICES (1) | ISN COST PAID BY FEDERAL GOVERNMENT* | COST TO CONTRACT CEILING OWED TO ISN WITHOUT FEE | COST OVER CONRACT CEILING DUE TO FINAL INDIRECT COST RATES | TOTAL ISN COST OVER AMOUNT PAID |
|---|---|---|---|---|---|---|---|---|---|---|
| | CPFF | | | | | | | | | |
| | COLUMN REFERENCE: | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | COLUMN FORMULA: | | | | | | C-D-E | A-F (B-F WHEN COST IS LESS THAN CEILING) | B-A ($0 WHEN COST IS LESS THAN CEILING) | G+H |
| 1017 | F19618-82-C-0108 | $ 1,280,078.02 | $ 1,294,145.84 | $1,277,449.11 | $113.00 | $ 600.52 | $1,276,735.59 | $3,342.43 | $14,067.82 | 17,410.15 |
| 1028 | NAS5-27486 | $ 2,354,815.08 | $ 2,157,134.28 | $2,146,838.59 | $26,126.00 | $ 10,056.00 | $2,110,656.59 | $46,477.69 | $0.00 | 46,477.69 |
| 1047 | MDA903-83-D-1504 | $ 2,753,210.87 | $ 2,749,661.18 | $2,630,701.47 | $17,572.00 | $ 6,518.00 | $2,606,614.47 | $118,956.71 | $0.00 | 118,956.71 |
| 1058 | MDA903-84-C-0222 | $2,454,733.16 | $ 2,310,343.84 | $2,360,330.35 | $51,222.00 | $ 44,168.00 | $2,264,930.35 | $45,413.49 | $0.00 | 45,413.49 |
| 1061 | DAAK20-84-C-0149 | $ 74,594.83 | $ 139,475.31 | $67,813.47 | | | $67,813.47 | $6,781.35 | $64,880.49 | 71,661.84 |
| 1062 | N68335-84-D-0903 | $ 76,880.00 | $ 161,192.70 | $52,264.11 | $1,068.00 | $ 8,394.00 | $42,802.11 | $34,077.79 | $84,312.70 | 118,390.49 |
| 1064 | DASG60-85-C-0035 | $ 54,372.36 | $ 82,919.73 | $53,834.02 | | | $53,834.02 | $538.34 | $28,547.37 | 29,085.71 |
| 1072 | 1026-47-0310 | $ 3,468,324.21 | $ 3,483,578.83 | $3,433,984.37 | | | $3,433,984.37 | $49,594.46 | $15,254.62 | 64,849.08 |
| 1074 | 1026-485009 | $ 145,751.15 | $ 282,478.53 | $144,308.07 | | | $144,308.07 | $1,443.08 | $136,727.38 | 138,170.46 |
| 1077 | F19628-85-C-0043 | $ 457,682.43 | $ 587,597.28 | $453,150.92 | $3,504.00 | $ 1,974.00 | $447,672.92 | $10,009.51 | $129,914.85 | 139,924.36 |
| 1079 | S03BNBSC3513 | $ 1,856,911.00 | $ 2,197,308.30 | $1,740,379.66 | | | $2,740,379.66 | $116,531.34 | $340,397.30 | 456,928.64 |
| 1083 | SC-Y-EIR-0028 | $ 6,602,341.43 | $ 6,689,763.70 | $6,472,883.75 | $15,360.00 | $ 61,658.00 | $6,395,865.75 | $206,475.68 | $87,422.28 | 293,897.95 |
| 1088 | DTFA01-85-Y-01018 | $ 825,238.00 | $ 894,386.17 | $819,237.86 | $9,086.00 | | $810,151.86 | $15,086.14 | $59,148.17 | 74,234.31 |
| 1091 | 85-C-00150 | $ 140,616.99 | $ 154,406.20 | $127,833.63 | | | $127,833.63 | $12,783.36 | $13,789.20 | 26,572.57 |
| 1093 | N00024-85-C-6528 | $ 2,512,790.92 | $ 2,638,770.52 | $2,475,656.08 | $21,943.00 | $ - | $2,453,713.08 | $59,077.84 | $125,979.60 | 185,057.44 |
| 1102 | DAAH00-85-C-0010 | $ 2,754,716.50 | $ 2,904,854.06 | $2,754,356.47 | $23,949.00 | $ 7,694.00 | $2,722,713.47 | $32,003.03 | $150,137.56 | 182,140.59 |
| 1125 | NASW-4164 | $ 4,686,804.00 | $ 2,952,703.43 | $2,681,657.40 | | | $2,681,657.40 | $271,046.03 | $0.00 | 271,046.03 |
| 1159 | MDA903-87-C-0004 | $ 1,493,504.26 | $ 1,578,187.02 | $1,457,077.33 | $10,762.00 | | $1,446,315.33 | $47,188.93 | $84,682.75 | 131,871.69 |
| 1175 | SEC-87-0008 | $ 203,000.00 | $ 204,564.62 | $188,644.00 | | | $188,644.00 | $14,356.00 | $1,564.62 | 15,920.62 |
| 1179 | N66604-87-D-0098 | $ 5,456,798.00 | $ 5,821,448.37 | $5,406,196.88 | $82,843.00 | | $5,323,353.88 | $133,444.12 | $364,650.37 | 498,094.49 |
| 1184 | MDA903-88-C-0702 | $ 2,457,059.00 | $ 2,684,236.89 | $2,334,235.94 | $22,484.00 | | $2,311,751.94 | $145,307.06 | $227,177.89 | 372,484.95 |
| 1191 | 273-91-C-0005 | $ 8,434,555.99 | $ 8,451,757.68 | $8,269,172.54 | $50,794.00 | | $8,218,378.54 | $216,177.45 | $18,201.69 | 234,379.14 |
| 2009 | DAAK70-83-C-0145 | $ 2,797,794.06 | $ 3,560,281.65 | $2,664,565.77 | $23,374.00 | $ 14,314.00 | $2,626,877.77 | $170,916.29 | $762,487.60 | 933,403.88 |
| | TOTAL CPFF | $ 53,342,592.26 | $ 53,972,196.13 | $ 50,012,564.89 | $ 360,200.00 | $ 155,376.52 | $ 49,496,988.37 | $ 1,757,028.11 | $ 2,709,344.36 | $ 4,466,372.38 |

14

1. These amounts are determined from the ISN records. DCMC is confirming the amounts to assure that they are not mis-stated based on Government records and additional modifications to the contracts.

2. The additional cost over cost ceiling amounts were caused by the bidding and billing rates that DCAA approved. Modifications to the contracts may alter the amount in this column

Schedule of Open ISN Contracts
Fiscal Years 1985 to 1996

| ISN PROJ NO | FRINGE<br>FEDERAL GOVERNMENT CONTRACT NUMBER | | TOTAL FEE ON CONTRACT | UNPAID INVOICED FEE | AMOUNT DUE TO ISN WITHIN CONTRACT INCLUDING RETAINED FEE | FISCAL YEARS OF PERFORMANCE | ESTIMATED INTEREST PER FAR PART 32 (3) | TOTAL AMOUNT DUE TO ISN WITH ADJUSTED COST AND INTEREST |
|---|---|---|---|---|---|---|---|---|
| | CPFF | | | | | | | |
| | COLUMN REFERENCE: | [redacted] | | | | | | |
| | COLUMN FORMULA: | | | | G+K | | | I+K+M |
| 1017 | F19628-82-C-0108 | | $ 122,696.98 | $ 17,560.52 | $ 10,902.95 | 1985-1986 | $ 8,719.24 | $ 43,750.01 |
| 1028 | NAS5-27486 | | $ 185,056.41 | $ 27,758.41 | $ 74,236.10 | 1984-1988 | $ 31,179.16 | $ 105,415.26 |
| 1047 | MDA903-83-D-1504 | | $ 365,259.53 | | $ 118,956.71 | 1984-1990 | $ 49,961.82 | $ 168,918.53 |
| 1058 | MDA903-84-C-0222 | | $ 245,623.60 | $ 10,330.70 | $ 55,744.19 | 1984-1985 | $ 23,412.56 | $ 79,156.74 |
| 1061 | DAAK20-84-C-0149 | | $ 8,237.80 | $ 1,235.56 | $ 8,016.91 | 1984-1986 | $ 3,367.10 | $ 76,264.50 |
| 1062 | N68335-84-D-4903 | | $ 14,069.80 | $ 520.72 | $ 34,598.51 | 1984-1986 | $ 14,531.37 | $ 133,442.59 |
| 1064 | DASG60-85-C-0035 | | $ 11,248.08 | $ 6,864.00 | $ 7,402.34 | 1985-1986 | $ 3,108.98 | $ 39,058.69 |
| 1072 | 1026-47-0330 | | $ 343,398.44 | $ 51,509.77 | $ 101,104.23 | 1984-1987 | $ 42,463.78 | $ 158,822.63 |
| 1074 | 1026-485009 | | $ 12,268.86 | | $ 1,443.08 | 1985-1986 | $ 606.09 | $ 138,776.56 |
| 1077 | F19628-85-C-0043 | | $ 32,729.25 | | $ 10,009.51 | 1985-1987 | $ 4,203.99 | $ 144,128.35 |
| 1079 | 503BNBSC3513 | | $ 159,471.00 | $ 16,685.00 | $ 133,216.34 | 1985-1988 | $ 55,950.86 | $ 529,564.50 |
| 1083 | SC-Y-EIR-0028 | | $ 474,551.32 | $ 110,172.00 | $ 316,647.68 | 1985-1990 | $ 132,992.02 | $ 537,061.97 |
| 1088 | DTPA01-85-Y-01018 | | $ 74,271.31 | | $ 15,086.14 | 1985-1988 | $ 6,336.18 | $ 80,570.49 |
| 1091 | 85-C-00150 | | $ 15,399.87 | | $ 12,783.36 | 1985-1986 | $ 5,369.01 | $ 31,941.58 |
| 1093 | N00014-85-C-6528 | | $ 212,922.50 | $ 23,092.45 | $ 82,170.29 | 1985-1990 | $ 34,511.52 | $ 242,661.41 |
| 1102 | DAAH00-85-C-0010 | | $ 213,421.86 | $ 15,080.36 | $ 47,083.39 | 1985-1990 | $ 19,775.02 | $ 216,995.98 |
| 1125 | NASW-4164 | | $ 215,755.00 | $ 32,364.00 | $ 303,410.03 | 1986-1991 | $ 127,432.11 | $ 430,842.24 |
| 1159 | MDA903-87-C-0004 | | $ 154,080.74 | $ 31,541.19 | $ 78,730.12 | 1987-1990 | $ 33,066.65 | $ 196,479.53 |
| 1175 | SEC-87-0008 | | $ 15,198.00 | | $ 14,356.00 | 1987-1990 | $ 6,029.52 | $ 21,950.14 |
| 1179 | N66604-87-D-0098 | | $ 348,284.66 | $ 51,944.87 | $ 185,388.99 | 1988-1993 | $ 55,616.70 | $ 605,656.06 |
| 1184 | MDA903-88-C-0702 | | $ 197,516.39 | $ 54,909.90 | $ 200,216.96 | 1988-1993 | $ 60,065.09 | $ 487,459.94 |
| 1291 | 273-91-C-0005 | | $ 602,722.69 | $ 8,981.55 | $ 225,159.00 | 1991-1996 | $ 54,038.16 | $ 297,398.85 |
| 2009 | DAAK70-83-C-0145 | | $ 225,193.00 | $ 33,809.85 | $ 204,726.14 | 1984-1989 | $ 85,984.98 | $ 1,053,198.71 |
| | TOTAL CPFF | $ - | $ 4,150,589.21 | $ 494,260.85 | $ 2,251,388.96 | | $ 858,792.03 | $ 5,819,515.26 |

3. Under FAR Part 32.905 a final invoice is due on the settlements date. Since DCMC would not settle the indirect cost rates until all litigation was settled, ISN has calculated the interest on outstanding amounts from the latest date it believes a reasonable settlement should have been expected.

DEFENSE CONTRACT MANAGEMENT AGENCY
DEFENSE CONTRACT MANAGEMENT AGENCY BALTIMORE
217 EAST REDWOOD STREET, SUITE 1800
BALTIMORE, MARYLAND 21202-5299

IN REPLY
REFER TO: DCMAE-GTOK

August 28, 2002

Information Systems & Networks Corporation
10411 Motor City Drive
Bethesda, MD 20817
ATTN: Mr. Charles Bonuccelli

SUBJECT: Extension on Final Decision of Information Systems & Networks Corp ("ISN") Claim

Ref: ISN Certified Claim Dated June 27, 2002

Dear Mr. Bonuccelli:

In accordance with Federal Acquisition Regulations 33.211(c)(2), I am writing to inform you that a final decision can not be reached on the subject claim within the FAR mandated 60 day period. My office received the claim on July 1, 2002. Due to the complexity of the multiple issues involved, many which require coordination between this office and DCAA and DFAS, it is anticipated that a decision will be issued by October 25, 2002.

Clarification is requested on several points contained in the claim. You state, "The indirect cost rates that were used to calculate the costs on the schedule comply with the requirements of FAR". Please specify what rates were applied and how they were chosen. Additionally, you state these rates "exclude the excess executive compensation and state income tax issues because they have been litigated and resolved." I believe the proper vehicle to resolve all undisputed costs would have been a roll forward agreement, one that would have rolled the state tax issue forward until the year in which it was resolved. It is my understanding that this resolution method was proposed by the previous Administrative Contracting Officer and rejected by ISN. That does not indicate a "refusal to discuss these issues". The attached Schedule of Costs states that ISN calculated interest from "the latest date that it believes a reasonable settlement should have been expected". Based upon your judgment, what was that date?

Lastly, as you noted my office have never had administrative responsibilities in regard to sixteen of the twenty-six contracts that you cite. You indicate that you may be amending this claim based upon this fact and in reaction to a listing of open contracts provided by my office. While under no obligation to do so, I provided you a list on July 16, 2002.

**EXHIBIT B**

Please let me know if this information in any way alters the facts or amounts of the subject claim. If you have any questions in regard to this matter you can contact me at (410) 962-9490, or via email at jsvensson@dcmde.dcma.mil .

JOHN H. SVENSSON
Administrative Contracting Officer

Cc: DCAA Silver Spring Branch Office, 20251 Century Blvd., Suite 320, Germantown, MD 20874-1162

DEFENSE CONTRACT MANAGEMENT AGENCY
DEFENSE CONTRACT MANAGEMENT AGENCY BALTIMORE
217 EAST REDWOOD STREET, SUITE 1800
BALTIMORE, MARYLAND 21202-5299

IN REPLY
REFER TO: DCMAE-GTOK

September 18, 2002

Information Systems & Networks Corporation
10411 Motor City Drive
Bethesda, MD 20817
ATTN: Mr. Charles Bonuccelli

SUBJECT: Request for Information Pertaining to Information Systems & Networks Corp ("ISN") Claim

Ref: ISN Certified Claim Dated June 27, 2002

Dear Mr. Bonuccelli:

As follow-on to my letter dated August 28, 2002 in which I requested certain information regarding your claim, I am requesting clarification of some of the statements that are made in the claim. Taking the unresolved issues in order:

Cost of Ownership – Please provide me a copy of your independent auditor's report for review, showing the basis and calculations. It is my understanding then that your objection to DCAA's methodology extends to the last summary of this issue, dated May 15, 1998 and forwarded to ISN.

Cost of Bonuses – I do not believe it is DCAA's "policy" to only allow bonuses paid on a cash basis, or to only allow accrual if it is advantageous to the Government. My records seem to indicate that a problem existed in reconciling what was paid and accrued to the overall amounts proposed by ISN. If the records exist, as you say, that clearly shows the basis for accrual and payment of the proposed bonus amounts, then I will gladly consider these and resolve this issue with ISN.

Cost of Pension - On first glance it should be, as you imply, simply a question of proof of funding prior to your tax date or extension. I do not believe that any misinterpretation of the FAR is at the heart of this disagreement. If I find that further information from ISN is required, I will make the request to you shortly.

Cost of Ownership/Equipment Rental - The existence of a previous ACO's determination that Shel-Nar had an established practice of leasing same/similar equipment to unaffiliated parties in 1983 does not bar the Government from questioning these costs

**EXHIBIT C**

proposed at a later date. For the years in question, I am not in possession of any evidence that Shel-Nar leased the same/similar equipment to unaffiliated enterprises. Please provide me evidence of commerciality during this period. If that is impossible, then evidence that the lease did not exceed the cost of ownership of this equipment.

Corporate Allocations - Several statements you made require immediate correction in regard to this issue. First, DCAA is certainly not responsible for and did not propose any method for ISN to allocate these costs in 1988. The proposal, dated February 19, 1988, was strictly ISN's and the general concepts were "reviewed" by the DCAA Branch Manager, Mr. Jackson. I believe the general problem with this allocation has been that the costs had never been adequately defined or booked consistently. I request that ISN provide the data that was requested by DCAA on June 9, 1994 or provide me a copy if previously forwarded.

Bid and Proposal Costs - I have attached a copy of the ACO's letter (and ISN's acknowledgement) that approved the special treatment of B&P costs as had been proposed by ISN. I see no other argument being made in your claim concerning this issue. Though in hindsight an allocation on the same basis as G&A may be admirable, it would be ignoring history.

Per my August 28, 2002 request, please provide me the rates that were used in calculating your claim in the form of pool and base for Fringe, G&A, and all Overheads. Noting exactly how they differ from DCAA's recommended rates would be helpful to me if it were not patently obvious. Request that you let me know when this information can be made available as the October 25, 2002 date largely depends upon expeditiously resolving these issues. I appreciate your cooperation and I look forward to meeting with you as necessary to discuss and hopefully resolve these issues. If you have any questions in regard to this matter you can contact me at (410) 962-9490, or via email at jsvensson@dcmde.dcma.mil .

JOHN H. SVENSSON
Administrative Contracting Officer

Cc: DCAA Silver Spring Branch Office, 20251 Century Blvd., Suite 320, Germantown, MD 20874-1162

Svensson, John H.

From: Charles Bonuccelli [cbonuccelli@isncorp.com]
Sent: Thursday, September 19, 2002 4:57 PM
To: Svensson, John H.
Subject: SOME DATA

RATES.xls

Dear John:

Attached is the schedule of the rates used for calculating the "claim", however, the actual calculations were made manually and I will have to find time to get them in electronic form. Do you have the February 19, 1988 proposal? I have the letter, but not the proposal. I also apologize for some of the comments made because my review of documents indicates that DCAA was against the allocation of G&A through the overhead pools, and it was ISN that was arguing for it. As you can see I agree with DCAA.

However, on another point I will forward the documentations that describes the Corporate allocations that was provided to DCAA in 1994. I will also provide DCAA's response, our response to that response and DCAA's response to our response to its initial response. (I could not resist!) As far as I know, the corporate allocation was also approved in 1988. I have found no indication that the pool was not consistently segregated and allocated from FY1988. DCAA's disagreement on this allocation did not take place till after FY1994 was well underway. The initial focus was on a description and an alternative to the method used for allocating. I agree that we cannot ignore history and I am willing to consistently follow the 1988 agreement if it is applied consistently.

On Bonuses, the reconciliation error occurred because DCAA did not look at bonuses paid in the one year where bonuses were not significant. In that year, bonuses were paid affecting bonus accruals in other years. Let me know what support you would like to prove it.

On cost of ownership, I will dig out the data. I offered it to your predecessor but she refused to look at it. By the way, offering to dump all the unresolved costs in a future year would not have helped us, so I could see where my predecessors may have refused. I really would entertain any process to resolve the open items that is equitable to both parties.

I understand your point about Shel-Nar, however, I do not have its records, not their company they are not a division of ISN. Considering the amount that is in question a compromise may be the only solution since Shel-Nar no longer exists.

On pension, I am not sure what your response is. If DCAA is quoting one part of a regulation and I am quoting another part, how can it not be a misinterpretation, on DCAA's or my part?

I am sorry that I do not work for a sane organization, where I could get you the information and revisions that we have talked about in a timely fashion. I actually sent out letters to other organizations on the contracts that you told me were not your responsibility. I have only been contacted by one of them. I also reiterate that I have found errors in some of the calculations and I must revise the table for both the contracts and the calculation errors.

I would like to know about anything we have sent you so far. That is, where it is in the process of being paid, where we owe more information or where there may be some issue about the payments. I really appreciate your help



EXHIBIT D

in trying to pinpoint exactly what ISN's closed contract status is. With the lawsuits and the payment diversions to pay for ISN debt's to the federal government, This is a much more complicated analysis then I typically come across. Thanks for your patience.

Sincerely,

Charlie Bonuccelli
<<RATES.xls>>